I welcome you to the Fourth Circuit today. We have had a break, and this is a new panel consisting of Judge Quattlebaum and me, and we're welcoming Judge Hannah Locke of the District of Eastern Virginia, who's sitting by designation in connection with this case, and we really appreciate having you with us. It's my privilege, thank you. This is number 21-1632, the United States Trustee v. Darren Thomas Delafield. And Mr. Delafield, good to have you with us, sir, and we'd be pleased to hear from you. Yes, Your Honor. Excuse me, may it please the Court. I'm Darren Delafield, the appellant in this matter. Let me start with a couple of housekeeping matters. My right eye will drift off on me, so if I fail to make eye contact with you, I promise you no insult is intended. Also, there's an error in my brief and in the U. S. Trustee's brief. We both state that the U. S. Trustee moved for a 45-day extension to object to discharge. In fact, the extension was for a 75-day extension. So the extension ended on May 31st, the same day that the adversary proceeding was filed in this case. I think that was harmless error, but just in case that fact was important to the Court, I wanted to point that error out. In this case, the trial court relied upon erroneous findings of fact and false premises and violated fundamentals of due process, despite the guidance set forth in this Court's opinion in the case of Nell v. U. S. According to Nell, due process requires that disbarment or suspension proceedings be preceded by advance notice and an opportunity to prepare a defense. Those prerequisites were not met in Nell, and they were not met in this case. The erroneous findings of fact of the Bankruptcy Court can be traced directly to the failure to give advance notice and an opportunity to prepare a defense. The Fourth Circuit in Nell recognized that the lack of due process increases the risk of error by the trial court. Due process protects not only the accused, it protects the trial court from error. The lack of advance notice, as the Court held in Nell, is constitutionally inadequate to provide a foundation for the extreme sanction from the disbarment from the practice of law. When you don't create that foundation, you then create a risk of error and a risk of harm to all of the parties involved. The Bankruptcy Court was never given advance notice by the U.S. trustee that it would be asserting new theories at trial. The Bankruptcy Court thus did not know which facts to focus on and did not lack, or excuse me, and lacked context when ruling on trial motions. So, Counsel, can I, it sounds like the position you're asserting is not that the remedy that was awarded was, that there was not, not that there was no notice of that, but that there was no notice of some of the grounds for which the remedy was awarded? That's correct. The complaint that initiated the adversary proceeding clearly said that I was at risk of receiving a $5,000 monetary sanction and clearly said that I was at risk of being disbarred or otherwise sanctioned. And if I did the things that I'm accused of, I forged debtor signatures or I asserted attorney-client privilege in bad faith or I blocked my clients from getting a discharge, those remedies would likely be appropriate. In fact, I'd probably be pleased to walk away with only that as a sanction, you know, if I had done those things. In this case, the attorney-client privilege was... The complaint filed, was filed against you and others and the law firm that you were part of or whatever you were in Chicago or someplace. That's correct. Was filed by the United States trustee. That's correct. The complaint was initiated by a complaint from the U.S. trustee's office. And you're saying that that complaint is not sufficient to comply with the due process notice requirements required under NEL? That's correct. I think... Is it fair to say that nobody involved in the bankruptcy court had ever heard of the It seems that, yes, that neither the bankruptcy court nor the district court nor the U.S. trustee's office nor myself were aware of NEL versus U.S. And you didn't know about it until our court forwarded it to you and the U.S. trustee. Is that right? You briefed this case. You briefed this case without knowing anything about that case. That is absolutely correct. But now you looked at it and you know that it was published in 1971 and written by the chief judge of the Four Circuit Court of Appeals and concurred in by two other judges, I think Judge Craven and Judge Bryan. You know that now, don't you? I do, Your Honor, yes. And you say it has something to do with this case. Maybe the trustee might say it doesn't have anything to do with it. But it's kind of shocking to me that if it does have something to do with it, that nobody knew anything about it. It's in the law books. It's in the Fed. I think it's in the Fed Second somewhere. I believe that's correct, Your Honor. Right. And you let the court do your research for you. And I am humbly grateful for the court doing that for me, Your Honor, while the issue of due process, I think, has been litigated. But Judge Hainsworth, who lived down where our friend Judge Quattlebaum is from, I think his name may be on Judge Quattlebaum's courthouse. I see it every morning. He's a renowned chief judge of this court for 30 years. Did you know that? I did not, Your Honor. You didn't look him up after you got a hold of that opinion? He was really the fellow. That's right. Yes, Your Honor. And did you see who the losing lawyer was in that case? I did. I believe he's now a Fourth Circuit judge, Your Honor. I believe it was yourself, Your Honor. Yeah. The facts in that case are eerily similar to the facts in this case loosely in that a Florida attorney came to West Virginia and then consulted with local counsel. And unfortunately, although I've not had a chance to interview Attorney Wood, who was the local counsel in West Virginia in that case, it appears that he was misled by counsel from Florida and that without any advance notice, other than the fact that the judge was going to have a hearing to reopen the case, decided sua sponte to sanction both the Florida attorney and Attorney Wood in that case without giving them advance notice or the ability to hire legal counsel or otherwise prepare a defense. Did Mr. Wood have a four-day trial? He did not have a four-day trial. Was there any complaint filed against him that gave notice at least of a remedy? No. Other than the fact that I believe the opinion says that he was told that there was going to be a motion to reopen and that their conduct was at issue, but there wasn't a specific set of charges. And that's my complaint in this case. The complaint as filed by the U.S. Trustee's Office characterized loosely is that I should be held per se liable under some sort of strict liability standard for the conduct that occurred in Chicago by the upright law firm. And if the finding of the bankruptcy court was limited to that factual allegation, I think I would still be here on appeal arguing that local counsel can't be held strictly liable absent a failure to implement reasonable measures to ensure that attorneys and paralegal staff are supervised. But not chasing that rabbit, what I'm complaining about is that it's extremely difficult to defend yourself against new charges asserted for the first time at trial. But you knew before the trial started, didn't you, about the specifics? No. No, I would disagree with that characterization, Your Honor. There was an answer to an interrogatory that was provided to myself, but that interrogatory or the answer to even to that interrogatory did not fully set forth the theory of the U.S. Trustee's Office as it was advocated. Did you make a motion for, and we used to be in the, I guess we still have them on the books in the criminal law, you could ask for a bill of particulars as to an indictment. You didn't ask for anything like that? There were no advance. They didn't take your deposition or anything? We attempted to take the deposition of the U.S. Trustee. But did they ever attempt to take your deposition? They did take my deposition, Your Honor. They did? Okay. Yes. And in fact, one of the new allegations that is raised against me is that I was somehow dishonest in my answers to responses I gave at that deposition. So, Counsel, you know, the adversary complaint, you know, contains a good bit of detail about the, I guess, the Sparrow Program. I don't know if I'm saying that, pronouncing it right. I prefer to call it the New Car Custody Program to avoid the use of Sparrow. Right. So, but it contains a good deal of information about that and how that's maybe at the heart of the complaints against you. I mean, do you agree with that? I do agree with that. Okay. I think a fair characterization of the original complaint as originally filed is that I should be responsible for my clients having participated in the New Car Custody Program because I, in some way, ratified their participation or that I should be held strictly liable because they participated in the program and then ultimately chose to file a bankruptcy petition on their behalf. So, if you were aware of what you just said, plus the fact that they were seeking the monetary penalty or the fine and the one-year suspension, I recognize you've identified perhaps some areas that weren't specifically listed in the adversary complaint. But, you know, if you had that information about the Sparrow Program, I think that was the basis of Counts 1 and 2 and 3, the disgorgement findings. And then the findings about the fine and the suspension, you know, the Sparrow or the New or the Car Custody Program, whatever, you know, was a substantial part of that finding, too. Do you agree with that? I'm not sure that I followed your question. Let me just try to do it this way. I mean, I guess my point is it sounds like you concede you had notice of the, you know, complaints against you concerning the car program. And if that's true, you know, and there were, you know, one or two other complaints that the fact that there were, you know, some additional complaints nullifies the things that you did have notice of? Yes, Your Honor, I think so. I think once the trial court made erroneous findings of fact and allowed the U.S. Trustee to assert new theories after the deadline had passed to amend the complaint, that that Was that specifically done? Was that specifically done? Was what specifically done, Your Honor? That the court allowed the additional theories after the time for amendment had passed? Yes, Your Honor, I would argue Was it done by implication or done explicitly? No, by implication. By implication, that's what I'm, all right, it just happened. Yeah, at trial It just happened at the trial. At trial, the U.S. Trustee began to introduce evidence regarding There was no notice before the trial, no pretrial order or anything that specified any of these new allegations. There was a pretrial order that set a deadline to amend the complaint. But the complaint was never amended. Right, anything is by implication. That's correct, so Failure to do it, basically, I don't want to put words in the trustee's mouth, they're basically now saying harmless error. So what? I see that I'm out of time. You keep answering questions as long as we ask them. Yes, Your Honor. Yes, so during the four-day trial, the U.S. Trustee attempted to introduce discovery Excuse me, evidence regarding the discovery dispute. My counsel objected to that evidence. The U.S. Trustee responded that the evidence should be admitted for the limited purposes of rebutting any theory that I might assert that I had reformed behavior. So that is, I think, clearly set forth in the record. Then, in the closing written argument, the U.S. Trustee's office asserted new theories in its written closing argument. In its closing argument. In my reply brief, the very first opportunity I had to respond on page 68, I specifically objected to those new theories which were being asserted as part of counts four and five. Ultimately, the court did dismiss counts four and five. So I do expect them to argue that, yes, it was harmless error because the bankruptcy court dismissed counts four and five. But if you read the U.S. Trustee's brief before this court, even now, in front of this court, the U.S. Trustee is attempting to re-argue cases that lost below or theories that it lost below, Your Honor. Arguing theories from counts four and five? That's correct, Your Honor, yes. Okay. You've saved some time, Mr. Delafield. Let's hear from the trustee. Ms. Sakata? Yes, Your Honor. May it please the court. Sumi Sakata for the United States Trustee. Your Honor. As Judge King anticipated, the United States Trustee does not think that in these cases. It's not relevant? We don't believe so, Your Honor. Not to the extent of the difference of facts involved. As Judge Locke mentioned, there was no complaint filed in Nell. By contrast, here, there was formal notice. And the thing was vacated. Nell was not the person subject to this. That's the name of the case. The lawyer's name is John Wood. But there was no complaint filed against John Wood. And that's part of the reason that the court granted Mr. Wood, this court, granted Mr. Wood, Judge Hainsworth's opinion, granted him relief. Says you can't do this. He didn't get his due process rights. Correct. There was no complaint filed. That's right. Whereas here, there wasn't. And here, you filed a complaint. Correct, Your Honor. That's right. And Wood, it's a distinction. There is a distinction there. There's no question about it. And Wood got relief, as you now know. But it does say that when you're trying to get sanctions or it indicates you're trying to get sanctions against a lawyer, a member of the bar, the lawyer's entitled to notice. Specification of the charges, what they call it in the military system, in the criminal law system, they call it indictments and that kind of thing. But in complaints, they're entitled to notice. Due process requires that lawyers get notice before they get punished. And the question is whether that was complied with here, certainly, and that was the question before you knew anything about the Nell case. But the Nell case gives you some idea, or did, I hope, that that's been the law on the Fourth Circuit for a long time. But for some reason, none of the lawyers knew it. So Mr. Delafield is being accused of being an ineffective or unethical lawyer. But on both sides, nobody understood the law of the Fourth Circuit. Your Honor, among other things, Mr. Delafield never complained about due process violations until this appeal. Even within the post-trial briefing that the court extended, he did not complain about the surprise of any new charges that were brought against him, in part because, as his counsel conceded, they were provided notice. The complaint that was filed alleged that Mr. Delafield and his co-defendants had engaged in illegal and or unethical behavior with regard to the Williams' case. And as Mr. Delafield conceded, in written discovery responses, in written responses to deposition questions, they had a question that specifically asked us to give the facts supporting what we contended was illegal and unethical behavior. And those responses included things like Mr. Delafield's inappropriate handling of his conflict of interest with the Williams. It included his assertion of the attorney-client privilege when the Williams' had not authorized to do so. It included also holding him responsible  because he was a partner of Upright. So all of those items were included, as well as, frankly, his misleading bankruptcy pleadings that he filed on the Williams' behalf with regard to their car. So all of those were provided before trial started. It's your position that the lawyers in Chicago and the lawyers in Virginia were responsible for everything that each of them did by normal agency rules, right? That's part of our theory, Your Honor. It's not the only one. And that would be quite a rule to apply to these big firms with their names on the buildings around here that have offices in New York and different places. If those entities, even the most vulnerable ones, if they were engaging in the kind of inappropriate mishandling of clients, then yes, they should be, Your Honor. Should they not? But also, and this goes to where... Are there any allegations in the complaint that specified the rules of professional conduct, the code of professional conduct, that were violated? The specific provisions of the code of professional conduct that were allegedly being violated. Did you make any allegations about that? It was not specific to the rules. It said illegal unethical conduct, Your Honor. Pardon? The complaint specified illegal unethical conduct. Illegal unethical conduct, but you didn't give any rules or statutes to identify... Not in the complaint. And you did not identify in particular any rules of the code of professional, any provisions of the code of professional conduct that's applicable to lawyers in Virginia. We did not specify that in the complaint. That's correct, Your Honor. But he was given notice of the conduct for which he was going... We contended he should be disciplined, and those... Do you think that... He knew all about it by implication? Which rules he was... What he'd done wrong, he knew by implication what was going to be tried? To the extent the... It was implied notice? Certainly... You mean you're arguing that he got due process? Yes, Your Honor. But it's by implied notice? By notice of the grounds, the actions and inactions that he took in the Williams' case, that that was unethical behavior and did violate his professional responsible duties. What was sufficient notice? Is that what you're saying? Yes, Your Honor. As an attorney who's... And then the alternative is it's harmless error because he's guilty anyway? He hasn't shown how... You used to call that... Well, I had a judge that I knew pretty well that used to sometimes refer to in the criminal cases the clearly guilty rule. Your Honor... Are you arguing the clearly guilty rule? I'm arguing that he hasn't shown a prejudicial effect. He has not shown in any way how he would have acted differently had he been provided with more advanced notice. There's a... Mr. Delafield referenced Inri Rufalo in his reply brief for the first time. Had we had a chance to file this reply brief, we would have pointed out that the facts of Rufalo which contended that a defendant should... An attorney should know before the proceeding start what the charges are but in a subsequent Supreme Court case called Zauderer versus Office of Disciplinary Counsel which is reported at 471 U.S. 626 Penn site 655 footnote 18. The Supreme Court explained that the Rufalo has to be confined to the facts of that case because in that case there were... There was a new charge that arose after he had done his defense and it arose from the evidence that the attorney had submitted in his defense and the Supreme Court said that was prejudicial but that in Zauderer where the theory of the disciplinary grounds had changed from the time of the complaint before it was submitted to the trial that that was okay because there was no prejudice that resulted as a change of the theory and although we maintain that Mr. Delafield was provided with sufficient notice of the grounds he's not shown any... how he would have acted any differently what additional evidence he might have been able to submit had he been provided with more advanced notice. So counsel it sounds like unlike in the Nell case you would point to the fact that there's an adversary complaint that contained a good deal of factual information contained a good deal of information about the relief or penalties that would be sought and through that and discovery yet most at least of the factual subject matter was provided in advance. You may not have identified the specific rules of professional responsibility but you provided sufficient information that a counsel litigant would be on notice to what was presented and what they were facing. Yes, Your Honor, absolutely. Can I ask so are you saying that in order to show prejudice that Mr. Delafield would have been required to make some kind of offer of proof? Are you saying that he would have had some standard which he would have had to meet that he didn't? Not necessarily a standard, Your Honor, but he simply hasn't made any attempt to do so. You do need to show some prejudice for there to be a due process violation. One other point with regard to Nell and due process, Your Honor, is in Nell the burden was on you. Was it not? You filed the complaint. The burden was on the United States trustee. Yes, Your Honor. The burden of proof. But you're talking about what he didn't do. On appeal to have a At what point did that burden flip over? When did the burden switch? Your Honor, if he's trying to show a due process violation to reverse an order on appeal, the burden to reverse that is on him. We met our burden of proof, Your Honor. The bankruptcy court, which held a four-day trial You had the burden to carry the day and make a prima facie case. Which we did, Your Honor, as the bankruptcy court held found. Without making charges? We did make charges, Your Honor. We made specific charges. Again, the charges were given he was given notice before trial started, he was also given general notice of the fact that we were maintaining he had conducted himself in an illegal and ethical manner in the case and the bankruptcy court agreed with us. It was supported by evidence, the record firmly supports those findings. But again, I was going to reference Nell with regard to due process if this court were to determine there had not been sufficient due process I would distinguish this case from Nell in an additional way. Were there any other cases in the four circuits since Nell about this kind of stuff? I haven't done a lot of research myself. I didn't do any research to find Nell, hardly. But I must have done more than anybody else did here. Well, we did review Leotti and Lewis your honor. Those were both  in which courts had suspended attorneys for misconduct. Before you had this hearing you hadn't done much research because you didn't have a firm opinion on the matter.   a  opinion on the matter. You had a firm opinion on the matter. But you didn't have a firm opinion  the matter. So the court ordered that the case be assigned to a new judge. So the judge resolving the hearing the case and imposing the sanctions if any would not be the judge who was offended who in that case had been lied to. How does that apply to this case? Because in Nell they held that because the local council had already had his  privileges suspended there was no need for remand. Whereas here because the bankruptcy court made its order effective only once the order became finally unappealable Mr. Nell   go to a new judge. I thought my recollection of the case is the last part of it has to go to a different judge. I believe with regard to the outside counsel or the criminal defendant it was  with regard to the outside counsel it was not with regard to the outside counsel it was not with regard to the out   It was not with  to the next leg appeal case with respect to the next case that was given court to reopen the case. That was the lack of complaint that reopened the proceedings. There were two appeals going on. I believe that now Mr. Woods did not have a remand. I didn't say he had a remand. I think he had a remand.        remand. I believe the state judge said I didn't get a remand. I don't know if the judge said  didn't  remand.  don't know if  judge  I didn't get a remand. I don't know if the judge said I didn't get a remand. I don't know if     didn't  remand. I don't know if the judge said I didn't get a remand. I don't know if the judge said I didn't get a remand. I don't know if  judge     remand. I don't know if the judge said I didn't get a remand. I don't know if the judge said I didn't get a remand. I    the judge said I didn't get a remand. I don't know if the judge said I didn't get a remand.  don't know if  judge said I didn't     know if he said I didn't get a remand. I don't know if the judge said I didn't have  remand. I told the court assistance attorney that tried to deal with him. He lost. I remember what happened. It has been a long time but I still remember it vividly. I remember         going to do it. I remember him saying that he would do it. I remember my son saying that he would do it. As you mentioned no one raised that issue I do not  should be  As you mentioned no one raised that issue. I remember my son saying that he would do it. I remember my son saying that he would        that he would do that. He did not do it. I do not should do it. I do not should    do     I do not should do it. » Yes, Your Honor, I agree with that. If there is a due process concern, it is not a basis for reversal here. It is  vacature and remand for further proceedings if there are due process concerns. That's all, Your Honor. I see I'm losing my mind. I would like to start by drawing the court's attention to an unpublished opinion from the Fourth Circuit. That's the case of Cohen v. Fox. The Fourth Circuit in the Fox opinion held, but the importance of professional and financial interests at stake and the principles of due process mandate great caution before assuming the court knows all it needs to know and the respondent has testified that they spoke to about the new car custody program. I might want to get different legal counsel who doesn't have a possible apparent conflict of interest between me and my co- counsel. I would also draw        thing that I would like the court to do. I would also draw the court's attention to the sentence of the U.S. trustee's brief before this court. I'm going to paraphrase it slightly, but quote, temporarily revoking Mr. Delafield's privilege to practice before the bankruptcy court causes him and others to rethink associating with a national law firm. That's really what the U.S. trustee's office is upset about. They don't like national bankruptcy law firms and they've admitted as much in their brief. Regarding, I guess, the possible remand to the bankruptcy court and whether a new judge should be assigned, I would have a couple of responses. One is the U.S. trustee's office has not argued a compelling reason why the case should be reopened to allow them to amend the complaint. Judge Black, the bankruptcy judge, set a deadline to amend the complaint. That deadline passed and there's just no compelling reason to allow them, there's no issue of justice to allow them to come back and amend the complaint at this late date roughly seven years later. This process started in 2015. Memories have faded, witnesses have moved, and without some compelling reason I would oppose that remedy on that basis. But I would also draw the court's attention, unfortunately, to Judge Black's statement when it was remanded by Judge Urbanski from the district court back to the bankruptcy court. Judge Black said regarding the sanction he imposed on a non-lawyer, Mr. Ed Scanlon, that if he had just had a chance to write a little bit more after having written all the pages that he did, that he should have put, and this is close to a quote, should have put more on the record regarding Mr. Scanlon. But it wasn't the judge's obligation to prove the case. It was the U.S. trustee's obligation to prove the case. I think in part because the district court didn't like the fact that Mr. Scanlon's hands were never far from the wheel. And that rhetoric wasn't enough to meet the burden of proof. I'm almost out of time so I'll answer any questions perhaps the court has. Thank you very much, Mr. Scanlon. We hadn't changed our hadn't been a pandemic. We would come down and shake hands with counsel and thank you for your help and speak to you personally. But we're not following that process these days. But I'll thank both of you for your help and for your work. And we'll take the matter under advisement. Thank you.
judges: Robert B. King, A. Marvin Quattlebaum Jr., M. Hannah Lauck